UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMY MYERS,

      Plaintiff,

v.

R.G.P., INC. D/B/A
QUALITY TEAM 1,

      Defendant.

Hon.
Case No.

---

Noah S. Hurwitz (P74063)
Kara F. Krause (P85487)
Grant M. Vlahopoulos (P85633)
HURWITZ LAW PLLC
Attorneys for Plaintiff
1514 Creal Crescent
Ann Arbor, MI 48103
(844) 847-9489
Noah@hurwtizlaw.com
Grant@hurwitzlaw.com
Kara@hurwitzlaw.com

---

There is no other pending or resolved civil action arising out of this transaction or occurrence alleged in the complaint.

## COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff Amy Myers ("Plaintiff"), by and through her attorneys, HURWTIZ LAW PLLC, and brings this action against Defendant R.G.P., Inc. d/b/a Quality Team 1 ("Defendant"), and hereby alleges as follows:

1

# INTRODUCTION

1. Plaintiff's claims arise out of Defendant's acts of sex discrimination in violation of the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d) and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), MCL § 37.2101 *et seq*, and out of Defendant's misclassification of its Plant Superintendent as an employee that is exempt from overtime compensation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*

# PARTIES, JURISDICTION, AND VENUE

2. Plaintiff Amy Myers is a resident of Canton, Michigan, which is located in Wayne County.

3. Defendant R.G.P., Inc. d/b/a Quality Team 1 is a domestic profit corporation with its resident agent located in Washington, Michigan, which is located in Macomb County.

4. This Court has general federal question jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff brings her claim pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq* and the Equal Pay Act of 1963, 29 U.S.C. § 206(d). This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims.

5. Venue in this Court is proper pursuant to 28 U.S.C. §1391, as a substantial part of the events and omissions giving rise to this Complaint occurred

within this judicial district. Additionally, Defendant's registered business address is located within the Eastern District of Michigan.

## STATEMENT OF FACTS

6. Plaintiff is female.

7. Plaintiff always performed her duties and responsibilities as Plant Superintendent diligently and to a high degree of satisfaction.

8. Plaintiff was quickly promoted from Supervisor to Plant Superintendent within six months of her hire.

9. Upon information and belief, Plaintiff's male counterparts, Mark Goodis and Damon Berryman, are performing similar work as Plant Superintendents, and they are compensated at a significantly higher rate.

10. Plaintiff earned $70,000 as an annual salary.

11. Upon information and belief, Mr. Goodis earns $72,000 as an annual salary.

12. Upon information and belief, Mr. Berryman earns $73,000 as an annual salary.

13. Messrs. Goodis and Berryman were both hired *after* Plaintiff.

14. Messrs. Goodis and Berryman earn significantly more than plaintiff despite not having comparable qualifications for the position.

15. On or about November 17, 2021, at the start of Plaintiff's shift, President Bradley Williams summoned Plaintiff for the purposes of terminating her employment.

16. Mr. Williams never gave a specific reason for termination.

17. Plaintiff had no history of discipline or negative performance reviews.

18. When Plaintiff asked for an explanation from Human Resources Manager Marty Cardamone, he conceded that he had "no idea" why Plaintiff was terminated.

19. After leaving Defendant's premises, Director of Operations John Rousseau told Plaintiff that Defendant's only customer, Magna Seating of America, Inc., claimed Plaintiff's production numbers were unsatisfactory.

20. However, Plaintiff's output exceeded that of her two male Plant Superintendent counterparts, Messrs. Goodis and Berryman.

21. Defendant terminated Plaintiff even though her male counterparts have documented attendance and disciplinary issues.

22. Defendant terminated Plaintiff without explanation despite failing to terminate a male employee who brandished a handgun and made threats to other employees in the workplace. Instead, that employee remained employed because he was a "friend" of Mr. Williams.

23. Plaintiff was terminated without any progressive discipline or warning.

24. Defendant has not cited a policy that Plaintiff violated.

25. At all times relevant to this Complaint, Defendant has been, and continues to be, an employer engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. § 203.

26. At all times relevant to this Complaint, Plaintiff was employed as a Plant Superintendent.

27. The basic duties of a Plant Superintendent are primarily made up of non-managerial and non-administrative tasks, including tasks performed by non-exempt employees on the floor of the plant and in production, operating machinery for compression work, operating forklifts, sequencing charts, and searching for materials on trucks that arrive at the facility.

28. Plant Superintendents are not separately trained to perform managerial and administrative duties.

29. Plant Superintendents do not require specialized knowledge, advanced degrees, or certification.

30. Plaintiff did not schedule employees.

31. Plaintiff did not make final hiring decisions.

32. Plaintiff did not have discretion to terminate Defendant's employees.

33. Plaintiff cannot set and/or adjust rates of pay and hours of work.

34. Plaintiff does not have discretion to direct the work of other employees.

35. Plaintiff did not have discretion to make status changes or recommend promotion.

36. Plaintiff could not discipline employees.

37. Plaintiff did not have a role in planning and/or controlling the budget.

38. Plaintiff did not perform office or non-manual work directly related to the management or general business operations of Defendant or Defendant's customers.

39. Plaintiff did not exercise discretion and independent judgment with respect to matters of significance.

40. Plaintiff did not have authority to make independent choices, free from immediate direction or supervision.

41. Plaintiff did not have authority to formulate, affect, interpret, or otherwise implement management policies or operating practices.

42. Plaintiff did not have authority to waive or deviate from established policies and procedures without prior approval.

43. Plaintiff did not act as an advisor to Defendant's customers.

44. Plaintiff consistently and regularly worked more than forty (40) hours per week, but Defendant did not compensate Plaintiff for her overtime by Defendant.

45. Defendant implements policies and practices to prevent Plaintiff from being compensated overtime hours despite working over 40 hours a week.

46. Plaintiff's primary duty as Plant Superintendent was to perform the non-managerial and non-administrative labor that other coworkers are tasked with performing.

47. Any management duties assigned to Plaintiff as Plaint Superintendent were routine and supervised by her superiors.

48. The management work Plaintiff performed as Plant Superintendent did not take priority over non-managerial tasks.

49. Any administrative duties assigned to Plaintiff as Plant Superintendent were routine and supervised by her superiors.

50. The administrative work performed by Plaintiff as Plant Superintendent did not take priority over non-administrative tasks.

51. Plaintiff did not always direct the work of at least two or more other full-time employees or their equivalent.

52. The work Plaintiff performed as Plant Superintendent renders her non-exempt.

53. As a result of the misclassification as an exempt employee, Plaintiff was unlawfully deprived of overtime compensation for all hours worked in excess of forty (40) per week.

54. Plaintiff never received overtime pay despite routinely working an average of approximately seventy (70) hours per week.

55. Messrs. Williams and Rousseau made clear that they *expected* Plaintiff to perform non-managerial tasks outside of her shift schedule and on weekends.

56. Every Tuesday and Thursday, Plaintiff attended conference calls at 7:30 p.m., which lasted up to two hours, even though her shift ran from 6:00 a.m. to 2:00 p.m.

57. Defendant required Plaintiff to draft an after-shift report—after which Mr. Williams would assign Plaintiff more non-managerial tasks.

58. In performing these duties, Plaintiff did not exercise discretion and independent judgment with respect to matters of significance.

59. Plaintiff was not allowed to deviate from established policies or procedures.

60. Upon information and belief, after Plaintiff's termination, Supervisor Dayna Montague assumed the Plaint Superintendent's responsibilities, even though Ms. Montague remained a "Supervisor," which underscores the fact that Plaintiff performed non-managerial job duties.

## COUNT I
## VIOLATION OF THE EQUAL PAY ACT OF 1963

61. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

62. At all relevant times, Defendant was an employer and Plaintiff was an employee covered by and within the meaning of the Fair Labor Standards Act, 29 U.S.C. 6 203(d).

63. Defendant owed Plaintiff a duty not to discriminate against her with respect to her compensation on the basis of her sex.

64. Plaintiff is a woman and otherwise a member of a protected class entitled to the protections afforded by the Equal Pay Act due to her sex (female).

65. Defendant and their agents, servants, and/or employees failed to pay Plaintiff equal wages as compared to comparable male employees for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

66. Such payments were not made pursuant to a seniority system, a merit system, a system which measures earnings by quantity or quality of production, or a differential based on any factor other than sex.

67. Defendant's violation of the Equal Pay Act was willful.

68. But for Plaintiff's sex, Defendant would not have subjected her to unequal conditions of employment.

69. As a direct and proximate result of Defendant's actions, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and impairment of her earning capacity and ability to work, and will so suffer in the

future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## COUNT II
## DISCRIMINATION IN VIOLATION OF THE ELCRA

70. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

71. Plaintiff is a member of a protected class based on her sex (female)

72. At all relevant times, Defendant was an employer, and Plaintiff was an employee covered by and within the meaning of the Elliott-Larsen Civil Rights Act, MCL 37 2201.

73. Plaintiff suffered adverse employment action based on her sex in violation of the Elliott-Larsen Civil Rights Act, MCL § 37.2202, *et seq*.

74. Plaintiff was held to different standards than her male counterparts based on her sex.

75. Plaintiff suffered adverse actions, including, but not limited to, termination.

76. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff was harmed, and continues to be harmed, in that she has suffered economic and non-economic loss, including but not limited to: lost wages, damages to professional reputation, emotional distress, outrage, humiliation, indignity and disappointment.

## COUNT III
## <u>VIOLATION OF THE FAIR LABOR STANDARDS ACT</u>

77. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

78. At all times relevant to this Complaint, Plaintiff was Defendant's employee within the meaning of the FLSA.

79. At all times relevant to this Complaint, Defendant has been, and continues to be, an employer engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. § 203.

80. Defendant violated the FLSA when it failed to pay Plaintiff as Plant Superintendent proper overtime compensation for hours worked in excess of forty (40) hours per week.

81. Defendant has a policy and practice of failing and refusing to pay Plaintiff for all hours worked in violation of the FLSA, 29 U.S.C. §§ 201, *et seq*.

82. Defendant's conduct in this regard was a willful violation of the FSLA.

83. As a result of Defendant's unlawful acts, Plaintiff is deprived of earned wages in amounts to be determined at trial. She is entitled to compensation for unpaid overtime wages, interest, liquidated damages, attorneys' fees and costs, and any other remedies available at law or in equity.

## <u>DEMAND FOR RELIEF</u>

**WHEREFORE**, Plaintiff prays for relief as follows:

A.    Declare that the aforementioned practices and actions of Defendant constitute unlawful employment practice in violation of the Equal Pay Act and the Fair Labor Standards Act;

B.    Judgment against Defendant in the amount of Plaintiff's unpaid back pay, front pay, injunctive relief, declaratory judgment, liquidated damages, punitive damages, and attorney fees under the Fair Labor Standards Act;

C.    Award Plaintiff compensatory damages;

D.    Award Plaintiff punitive and exemplary damages;

E.    Award Plaintiff reasonable attorney's fees, costs, and interest; and

F.    Award such other relief as this Court deems just and proper.

> Respectfully submitted
> HURWITZ LAW PLLC
>
> */s/ Noah S. Hurwitz*_____
> Noah S. Hurwitz (P74063)
> Attorney for Plaintiffs
> 617 Detroit St. STE 125
> Ann Arbor, MI 48104
> (844) 487-9489

Dated: February 17, 2022

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMY MYERS,

      Plaintiff,

v.

R.G.P., INC. D/B/A
QUALITY TEAM 1,

      Defendant.

Hon.
Case No.

---

Noah S. Hurwitz (P74063)
Kara F. Krause (P85487)
Grant M. Vlahopoulos (P85633)
HURWITZ LAW PLLC
Attorneys for Plaintiff
1514 Creal Crescent
Ann Arbor, MI 48103
(844) 847-9489
Noah@hurwtizlaw.com
Grant@hurwitzlaw.com
Kara@hurwitzlaw.com

---

## DEMAND FOR TRIAL BY JURY

NOW COMES Plaintiff Amy Myers, by and through her attorneys, HURWITZ LAW PLLC, hereby demand a jury trial in the above-captioned matter for all issues so triable.

      Respectfully submitted
      HURWITZ LAW PLLC

      */s/ Noah S. Hurwitz*
      Noah S. Hurwitz (P74063)

                                                            Attorney for Plaintiffs
                                                            617 Detroit St. STE 125
                                                            Ann Arbor, MI 48104
Dated: February 17, 2022                            (844) 487-9489